IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Garcia Venson,

        Plaintiff,

v.                          Case No. 1:12-cv-1797-MLB

Georgia Department of Public
Safety, et al.,

        Defendants.

_____/

**OPINION & ORDER**

This thirteen-year-old case comes before the Court on Defendant Kimberly Davis's Motions to Lift Stay and Dismiss for failure to state a claim. (Dkt. 18.) Plaintiff Garcia Venson, an inmate, responded. (Dkt. 27.)[1] The Court lifts the stay and grants Davis's motion.

---

[1] The Court considers Plaintiff's response. "Under the 'prison mailbox rule,' a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Daker v. Comm'r, Ga. Dep't of Corr.*, 820 F.3d 1278, 1286 (11th Cir. 2016). "Absent evidence to the contrary, [courts] assume that the prisoner's filing was delivered to prison authorities the day he signed it." *Id.* Here, while the Clerk filed Plaintiff's response days after the deadline, Plaintiff signed it on December 27, 2024—the final day to respond. (Dkts. 26; 27 at 6.) And

**I.    Background**

On March 30, 2010, Georgia State Patrol Officer Davis pulled Venson over in DeKalb County, Georgia. (Dkt. 1 ¶¶ 8, 10.) That interaction led to a struggle between Officer Davis and Venson that resulted in three legal proceedings—a 2010 criminal case in which the State of Georgia charged Venson for his conduct in regard to Davis (Dkt. 18-2 at 1); this 2012 civil case in which Venson sues Davis and the Georgia State patrol, claiming Davis assaulted him (Dkt. 1); and a 2012 criminal case that replaced the 2010 criminal case and in which a jury convicted Venson on eight counts, including two counts of aggravated battery against Davis, aggravated assault against Davis, removal of a weapon from public official involving Davis, felony obstruction of an officer involving Davis, and three counts involving his interactions with

---

even if it was untimely, Defendants never objected. *Gindt v. LifeHope Labs*, 2023 WL 6194079, at *2 (N.D. Ga. May 12, 2023) (allowing untimely response in the light of plaintiff's pro se status and defendant's failure to move to strike the response).

other officers on the same day as his interactions with Davis. (Dkt. 18-2 at 23–22.)[2]

The Georgia Court of Appeals' decision affirming Venson's conviction for his conduct against Officer Davis (and the other officers) contains a detailed statement of the facts at issue in that case. (Dkt. 18-3.) The Court—as it must at this stage—accepts Venson's well-pleaded factual allegations in this case as true even though they are completely inconsistent with the facts underlying his conviction. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Venson pleads that, after Davis pulled him over for an alleged traffic violation, she threatened his life, shot him three times, and forced him to defend himself by fighting with her. (Dkt. 1 ¶¶ 12–16.) More specifically, he alleges that, after he had "completely given up" and asked Davis to handcuff him, she refused

---

[2] The Court takes judicial notice of this indictment and other court documents related to Venson's convictions for the limited purpose of establishing the judicial act and the status of his appeal. *Garcia-Garcia v. N.Y.C.*, 2013 WL 3832730, at *1 n.1 (S.D.N.Y. July 22, 2013) (taking judicial notice of criminal disposition data and indictments to show plaintiff was arrested and charged with specific crimes). Because nobody contests the authenticity of the documents, the Court need not convert Davis's motion to dismiss into a motion for summary judgment. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999) (approving judicial notice of facts without fear of conversion).

and threatened to shoot him in the back of the head. (*Id.* ¶¶ 12–13.) Venson, attempting to "ease the tension," stood up, "stepped" over a fence, turned around, and placed his hands behind his back. (*Id.* ¶ 14.) He says Davis approached him and—"for no justification whatsoever"—shot him in the back. (*Id.* ¶ 15.) As Davis prepared to shoot Venson again, he ducked, causing the bullet to graze his head. (*Id.*) Venson then "rais[ed] his left arm" and hit the gun before Davis shot him in the chest. (*Id.*) Venson grabbed the pistol and Davis's hands "in a desperate attempt to save his life after being shot three times without justification," causing Davis to fire all her remaining rounds. (*Id.*) Venson then fled. (*Id.* ¶ 16.)

Venson filed this case against Davis, the Georgia State Patrol, and other state actors in 2012—while he was facing the 2010 charges but before his indictment in the 2012 criminal case that led to his conviction. (Dkts. 1; 18-2 at 13.) Venson asserts claims under 42 U.S.C. §§ 1983 and 1985. (Dkt. 1 ¶¶ 8, 19.) The Court previously dismissed all his claims except those against Davis in her individual capacity. (Dkt. 17 at 4.) Citing the *Younger*[3] abstention doctrine, the Court also stayed this

---

[3] *Younger v. Harris*, 401 U.S. 37 (1971).

case pending resolution of the criminal charges. (*Id.* at 8.) In 2020, the Georgia Court of Appeals affirmed Venson's conviction, and Davis now moves to lift the stay and dismiss the final claim. (Dkts. 18-3; 18.)

## II.   Discussion

The Court labors to understand the basis for Venson's claims. In one paragraph of his complaint and in response to Davis's motion to dismiss, Venson relies on violations of the Fifth, Sixth, Eighth, Thirteenth, and Fourteenth Amendments. (Dkts. 1 ¶ 8; 27 at 2.) In Count One of his complaint, however, he says he seeks relief under the Fourth, Fifth, and Fourteenth Amendments. (Dkt. 1 ¶ 19.) The Court previously identified Count One as setting forth the basis for his claims. (Dkt. 17 at 1.) Venson never complained about that characterization.

The Court now further whittles Venson's cornucopia of constitutional violations. Several elementary principles of constitutional law guide the Court's focus. For one, the Fifth Amendment Due Process Clause "applies only to the federal government," and Davis was a state employee. *Hooper v. City of Montgomery*, 482 F. Supp. 2d 1330, 1335 (M.D. Ala. 2007) (citation omitted). The Sixth Amendment's protections center around governmental conduct "[i]n all criminal prosecutions," yet

Venson was not detained at the time he fought with Davis. *See* U.S. Const. amend. VI. The Eighth Amendment, too, is out because it applies "only after a citizen has been convicted of a crime," and the police had not yet arrested Venson. *Weiland v. Palm Beach Cnty. Sherriff's Off.*, 792 F.3d 1313, 1328 (11th Cir. 2015) (citation omitted). The complaint also mentions the Thirteenth Amendment and the absence of probable cause. (Dkt. 1 ¶ 10.) But Venson never plausibly alleges any such violation. Finally, "under the Supreme Court's current [excessive force] framework, the Fourth Amendment covers arrestees, the Eighth Amendment covers prisoners, and the Fourteenth Amendment covers those who exist in-between as pretrial detainees." *Crocker v. Beatty*, 995 F.3d 1232, 1246 (11th Cir. 2021). Venson's allegations involve conduct before his arrest. So Venson's only colorable claim lies in the Fourth Amendment under an excessive force theory. To the extent the Court misunderstands Venson's theories, the fault lies with his former attorney's poor drafting.

### A.   Pleading Concern

Before addressing the merits, the Court pauses to address a pleading issue not raised by anyone. The Federal Rules of Civil

Procedure establish two axiomatic pleading rules. Rule 8 requires a "short and plain statement of the grounds of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 10 mandates litigants to "state [their] claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).

These principles appear foreign to Venson's complaint.[4] The Eleventh Circuit classifies complaints like these as "shotgun complaints." *Weiland*, 792 F.3d at 1320. Indeed, Venson's complaint bears many indicia of this disfavored practice. For one, it indiscriminately adopts every preceding allegation. *See id.* (identifying one class of shotgun complaints as those "containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint"). The reincorporated allegations also consist mostly of

---

[4] While the Court liberally construes Venson's response to Davis's motions, it does not liberally construe the complaint since Venson's former counsel drafted it. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (holding pro se pleadings to a "less stringent standard than *pleadings drafted by attorneys*" (emphasis added)).

vague and conclusory statements, appearing to relate to different theories under any number of constitutional violations. *See Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1359 n.9 (11th Cir. 1997) (discussing a pleading requiring "a reader of the complaint [to] speculate as to which factual allegations pertain to which count"). And to make matters worse, the complaint lumps those conclusory, reincorporated allegations into a *single* § 1983 count that mentions a potpourri of possible theories under numerous supposed constitutional provisions. *See Bickerstaff Clay Prods. Co. v. Harris Cnty.*, 89 F.3d 1481, 1484 n.4 (11th Cir. 1996) ("The complaint is a typical shotgun pleading, in that some of the counts present more than one discrete claim for relief.").

The Court *strongly* considered making Venson replead his complaint without reaching this motion. But because Davis never asked for dismissal on this ground, the Court assumes she somehow "received adequate notice of the claims against [her] and the grounds upon which [the] claim rests." *Weiland*, 792 F.3d at 1323. The Court thus presses forward.

### B.     Motion to Lift Stay

To lift the stay, the Court instructed the parties to file "a motion and documentation establishing that the state court criminal proceedings against plaintiff have concluded." (Dkt. 17 at 8.) Davis did so in her motion to dismiss. So the Court lifted the stay in May 2024. (Dkt. 19.) Venson, for some reason, later agreed the Court should do that. (Dkt. 27 at 4.) To the extent Venson misunderstood the Court's prior order, the Court reiterates: the stay is lifted. *See, e.g.*, *Everett v. Martin*, 2021 WL 2139418, at *1 (E.D. Ark. May 26, 2021) (lifting *Younger* stay upon litigant's telling the court that the judgment reached finality).

### C.     Motion to Dismiss

Courts may dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 556 U.S. 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550

9

U.S. at 556). In evaluating the sufficiency of the complaint, courts accept all well-pled facts as true and construe them "in the light most favorable to the plaintiff." *Devengoechea v. Bolivarian Republic of Venez.*, 889 F.3d 1213, 1218 n.6 (11th Cir. 2018) (citations omitted).

Davis says the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477, 489 (1994), bars any claims Venson asserts against her. (Dkt. 18-1 at 7.) *Heck* bars a state prisoner from suing an arresting officer for damages under § 1983 when success in that civil suit "would necessarily imply the invalidity of the [prisoner's] conviction or sentence." *Harrigan v. Metro Dade Police Dep't Station #4*, 977 F.3d 1185, 1192 (11th Cir. 2020). Most importantly here, *Heck* precludes claims that, "if successful, would *necessarily* imply the invalidity of the conviction because they would negate an element of the offense." *Hughes v. Lott*, 350 F.3d 1157, 1160 n.2 (11th Cir. 2003) (emphasis added). To determine whether such a negation would occur, the Court must look at both the claims raised in the federal action and "the specific offenses for which the [] claimant was convicted." *Id.* "Factual allegations bar claims under *Heck* in only narrow circumstances: where the allegation in the § 1983 claim is a specific one that both necessarily implies the earlier decision is

10

invalid *and* is *necessary* to the success of the § 1983 suit itself." *Hall v. Merola*, 67 F.4th 1282, 1292 (11th Cir. 2023) (emphases added). Under either route, the terms "necessary" or "necessarily" do a lot of work. *See Nelson v. Campbell*, 541 U.S. 637, 647 (2004) ("[W]e were careful in *Heck* to stress the importance of the term "necessarily."). The inquiry into whether success in a civil case necessarily implies invalidity of a prior conviction "sounds in theoretical possibility." *Harrigan*, 977 F.3d at 1193. "So long as 'there would still exist a construction of the facts that would allow the underlying [punishment] to stand,' a § 1983 suit may proceed." *Dixon v. Hodges*, 887 F.3d 1235, 1238 (11th Cir. 2018).

Davis relies on Venson's convictions for felony obstruction and removing a weapon from a public official to argue *Heck* precludes his claims against her. (Dkt. 18-1 at 10.) Georgia's felony obstruction provision—O.C.G.A. § 16-10-24(b)—makes it a crime to "knowingly and willfully resist, obstruct, or oppose any law enforcement officer . . . [who is acting] in the lawful discharge of his or her duties by . . . doing violence to the person of such officer." O.C.G.A. § 16-10-24(b). "[A]s an essential element of a prosecution for this offense, the State must prove that the officer was in the lawful discharge of his official duties at the time of the

11

obstruction." *Bacon v. State*, 820 S.E.2d 503, 505 (Ga. Ct. App. 2018). Under this statute, "[a]n officer does not lawfully discharge h[er] duties when [s]he uses unlawful or excessive force to effectuate an arrest." *Cross v. Lacey,* 2015 WL 5341091, at *3 (M.D. Ga. Sept. 14, 2015). Georgia's statute making it a crime to remove a weapon from a police officer—O.C.G.A. § 16-10-33(b)—requires that the peace officer be "lawfully acting within the course and scope of employment." O.C.G.A. § 16-10-33(b)(1). So Venson's convictions preclude him from pursuing any claims against Davis that necessarily imply Davis was not acting lawfully within the scope of her employment and did not use excessive force at the time she shot him.

That is a problem for Venson. He claims he had given himself up to be arrested by Davis, that he was docile, that she shot him three times for no reason, and that he only took her gun "in a desperate attempt to save his life." (Dkt. 1 ¶¶ 13–15.) He says that, after doing this, he immediately fled for his life, thus having no more involvement with Davis. He thus necessarily alleges that Davis was acting wrongfully at the time he disarmed her and fled. But, in convicting him of wrongfully disarming Davis, the jury necessarily concluded Davis was acting within

12

the course and scope of her employment at that time. A finding in this case that Davis acted wrongfully in shooting him would necessarily imply the invalidity of that conviction. Similarly, since Venson's involvement with Davis ended after he disarmed her and fled, the jury in the criminal case must have concluded his actions prior to fleeing constituted felony obstruction. And that required them to find Davis was not using unlawful or excessive force in effectuating Venson's arrest. But to prevail in this case, he would have to show just the opposite: that Davis violated his constitutional rights by using excessive force during their altercation. His allegations in this case—that Davis was the aggressor and that he acted in self-defense—cannot coexist with his prior convictions—that required a finding that Davis was acting within the scope of her employment and not using excessive force.

This is not a case where the Court could theorize an alternative set of facts to resolve the dispute between his current claims and his prior convictions. The Court cannot, for example, hypothesize that perhaps Davis initially mistreated Venson with excessive force (thus giving rise to his civil claim) and then Venson obstructed Davis and took her gun after he became docile (thus giving rise to his convictions). Venson's

13

allegations do not permit this extrapolation. He alleges one continuous event—starting with him having already given up, begging to be arrested, and placing his hands behind his back. (*Id.* ¶ 13.) He says he remained that way throughout their encounter, only fighting back and taking Davis's gun to save his own life. (*Id.* ¶ 15.) Likewise, he alleges Davis used excessive force throughout the encounter, starting when she shot him the first time and continuing until the moment he fled. (*Id.* ¶¶ 13–15.) While the *Heck* analysis requires consideration of other theoretical possibilities, it does not require the Court to consider possibilities directly at odds with Venson's allegations. He is the master of his complaint and, in that way, controls the scope of the analysis. His allegations set the outer bounds of any theoretical exercise the Court does to reconcile his prior convictions and his current claims. Reconciliation is not possible here as Venson's allegations against Davis necessarily and unavoidably imply the invalidity of his convictions. *Heck* thus bars his claims against Davis.

### D. Withdrawal Notice

Unrelatedly, Venson asked for and received several extensions to find counsel. (Dkts. 22, 23; 25, 26.) Yet he listed his supposedly former

14

counsel as "Attorney for Plaintiff" in his recent certificate of service. (Dkt. 27.) And his former counsel never withdrew. Though the Court takes Venson's word on his pro se status, his former counsel must withdraw under the Court's Local Rules if he no longer represents Venson. *See* LR 83.1(E), NDGa (describing the withdrawal process).

## III. Conclusion

The Court **GRANTS** Davis's Motion to Lift Stay and Dismiss. (Dkt. 18.) The Court **DIRECTS** the Clerk to close this case.

**SO ORDERED** this 6th day of March, 2025.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE